# EXHIBIT A



Search for Cases by: Select Search Method... ▼

Judicial Links | eFiling | Help | Contact Us | Print       GrantedPublicAccess  Logoff KSANOCKI2388

21SL-CC00593 - MAHASIN AHMAD V PANERA BREAD COMPANY (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries:  ○ Descending  ○ Ascending

Display Options: All Entries ▼

---

**02/19/2021** ☐ **Summons Personally Served**
Document ID - 21-SMCC-1222; Served To - PANERA BREAD COMPANY; Server - ; Served Date - 11-FEB-21; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

**02/12/2021** ☐ **Notice of Service**
Return of Service, 2 11 2021.
  **Filed By:** TIFFANY MARKO YIATRAS
  **On Behalf Of:** MAHASIN AHMAD

**02/10/2021** ☐ **Summons Issued-Circuit**
Document ID: 21-SMCC-1222, for PANERA BREAD COMPANY.Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Motion Special Process Server**
Request for Appointment of Process Server.
  **Filed By:** TIFFANY MARKO YIATRAS
  **On Behalf Of:** MAHASIN AHMAD

**02/09/2021** ☐ **Judge/Clerk - Note**
NO SUMMONS ISSUED. AS OF SEPT 1, 2019, THE CIRCUIT CIVIL DEPARTMENT IS ONLY ACCEPTING THE SPECIAL PROCESS SERVER FORM FROM OUR WEBSITE WITH THE SECOND PAGE ATTACHED. PLEASE REFILE THE CORRECT SPECIAL PROCESS SERVER FORM FOR YOUR SUMMONS TO BE ISSUED. WHEN CORRECTED, PLEASE CALL CLERK, MOLLY, (314) 615-8470.

**02/08/2021** ☐ **Motion Special Process Server**
Motion for Appointment of Special Process Server.
  **Filed By:** TIFFANY MARKO YIATRAS
  **On Behalf Of:** MAHASIN AHMAD

☐ **Notice**
Notice of Appearance of Tiffany Marko Yiatras.
  **Filed By:** TIFFANY MARKO YIATRAS
  **On Behalf Of:** MAHASIN AHMAD

☐ **Filing Info Sheet eFiling**
  **Filed By:** TIFFANY MARKO YIATRAS

☐ **Pet Filed in Circuit Ct**
Class Action Petition, Exhibit A, Venue Affidavit; Exhibit B, Codes of Conduct AMA Statement of Ethics.
  **Filed By:** TIFFANY MARKO YIATRAS
  **On Behalf Of:** MAHASIN AHMAD

☐ **Judge Assigned**

DIV 7

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

## IN THE CIRCUIT COURT
## OF ST. LOUIS COUNTY, MISSOURI

MAHASIN AHMAD, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

PANERA BREAD COMPANY,

**SERVE AT:**

3630 South Geyer Road, Suite 100
St. Louis, Missouri 63127

Defendant.

Case No.
Division No.

**JURY TRIAL DEMANDED**

## CLASS ACTION PETITION

COMES NOW, MAHASIN AHMAD, individually and on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through Plaintiff's attorneys as follows:

### NATURE OF ACTION

1.      Expressly disclaiming damages under Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*., this is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Panera Bread Company, ("Defendant" or "Panera"), arising from its deceptive and untruthful promises to provide a flat delivery charge (normally, $4) on food deliveries ordered through its App and website.

2.      Since the beginning of the COVID-19 pandemic, Panera has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace, Panera has prominently marketed flat, low-cost delivery in its mobile application and on its website.

3.      These representations, however, are false.  Panera actually imposes additional, hidden delivery charges on its customers.

1

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

4.      Specifically, Panera secretly marks up food prices for delivery orders only by 5%-7%.  In other words, the identical sandwich costs approximately $1 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

5.      This hidden delivery upcharge makes Panera's flat, low-cost delivery promises patently false.  The true delivery costs are obscured, as described above, and far exceed the prominent flat, low-cost promises.

6.      By falsely marketing flat, low-cost delivery, Panera deceives consumers into making website or mobile app food purchases they otherwise would not make.

7.      Panera misrepresents the nature of the delivery charges assessed on the Panera mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of the flat, low-cost delivery promises, and that misrepresent the actual costs of the delivery service.

8.       Specifically, Panera omits and conceals material facts about the Panera delivery service, never once informing consumers in any disclosure, at any time, that use of the delivery service causes an increase in food prices.

9.      Hundreds of thousands of Panera customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

10.     Consumers like Plaintiff reasonably understand the flat, low-cost delivery representations mean the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering through the app and picking up food in person.

11.     By unfairly obscuring its true delivery costs, Panera deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Panera competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Panera, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

12.     Expressly disclaiming damages under Consumers Legal Remedies Act (CLRA),

Electronically Filed - St. Louis County - February 08, 2021 - 08:19 PM

California Civil Code § 1750, *et seq*., Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Panera's delivery mark-ups.

## PARTIES

13.    Plaintiff MAHASIN AHMAD is a citizen of the State of California, residing in Rancho Cucamonga, California.

14.    Defendant, PANERA BREAD COMPANY, is engaged in the business of providing food and delivery services to consumers, including Plaintiff and members of the putative class.  Defendant Panera Bread Company, organized under the laws of Delaware with a principal place of business in the State of Missouri, resides in the county of St. Louis, Missouri.

## JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over Defendant because Defendant conducts business and maintains its headquarters and numerous restaurants throughout the state of Missouri.

16.    Venue is proper in this Court pursuant to Mo. Rev. Stat. 407.100(7) because Defendant resides in the County of St. Louis, Missouri and/or Defendant's principal place of business is in the County of St. Louis, Missouri.  Venue is also proper pursuant to California Civil Code Section § 1780(d) because St. Louis County, Missouri is the county in which the Defendant (a) resides; (b) has its principal place of business; and (c) is doing business.  Plaintiff has filed concurrently with Plaintiff's Petition Plaintiff's declaration of venue required by California Civil Code Section 1780(d), which is attached hereto as **Exhibit A**.

## COMMON FACTUAL ALLEGATIONS

**A.    Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic**

17.    The online and mobile app food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for web-based and mobile app delivery food services

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

are the young and the poor[1]. During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44[2]. The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%)[3].

18.    Put plainly, the allure for online and mobile app food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather[4].

19.    The arrival of the unprecedented COVID-19 pandemic escalated the value of online and mobile app food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

20.    In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services[5]. A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent

---

[1]    *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps*.
[2]    *Id.*
[3]    *Id.*
[4]    *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019.
[5]    Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

impacts the restaurants they support and patronize in their communities."

**B.    Panera's App and Website Fails to Bind Users to Any Terms of Service**

21.    When a consumer downloads the Panera app, or uses the Panera website, he or she can choose to place an order without creating an account.

22.    If one chooses to create an account, one enters in a name and contact information.

23.    While the account creation screen contains a small hyperlink to view Panera's Terms of Service, users are not required affirmatively consent to such terms, such as by clicking a check box.

**C.    Panera Prominently Promises Flat Fee Delivery on its App and Website**

24.    Beginning in early 2020, Panera began prominently featuring flat, low-cost delivery promises on its mobile application and on its website.

25.    Such representations often are made on the home screen of the app or website.

26.    These flat, low-cost representations are then reiterated on the penultimate screen shown to consumers before finalizing a food purchase.

27.    Specifically, for supposed $4 flat fee delivery orders, that penultimate screen states:

Subtotal: [representing the cost of the food selected]

Delivery Fee:  [normally, $4]

Taxes:  [representing sales taxes]

TOTAL:  [adding up the above]

28.    In the end, there was no way for Plaintiff or other users of the Panera mobile application or website to avoid seeing Panera's promises of flat, low-cost delivery.

**D.    Panera Omits and Conceals Material Facts About the Costs of the Panera Delivery Service**

29.    But those disclosures were false and misleading.

30.    First, Panera furtively marked up the cost of food reflected in the "Subtotal"—adding 5-10% to the cost of food ordered for delivery.  Panera did not and does not make similar mark-ups for identical food items ordered via the same app or website, where such items are

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

ordered for pickup instead of delivery, or for food items ordered in-store.

31.     Panera omitted this material fact from its app and website disclosures, never informing users of this secret markup.

32.     This secret markup—which Panera only applied to delivery orders—is a hidden delivery fee.  This alone renders false Panera's promise of flat, low-cost delivery, which is made repeatedly in the app and the website, and then in the "Delivery Fee" line-item on the order screen.

33.     In short, the "delivery fee" is not actually "$4."  The actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

34.     Panera therefore does not inform consumers the true costs of its delivery service and it misrepresents its delivery charges as "$4" when in fact those costs are actually much higher.

**E.     Other Restaurant Industry Actors and Panera Competitors Disclose Delivery Fees Fairly and Expressly**

35.     By unfairly obscuring its true delivery costs, Panera deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Panera competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Panera, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

36.     For example, Del Taco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders.  Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

37.     All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

the delivery service.

38.    Similarly, Panera competitor El Pollo Loco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

39.    All line-item amounts are **_identical_** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

### _Defendant's Practice Is Unethical and Violated Established Ethical Standards_

40.    Defendant's practices, as alleged herein, violated generally accepted ethical principles of business conduct.

41.    The basis for the allegation that it was unethical to engage in the above practices comes, in part, from established ethical principles recognized by the American Marketing Association.

### AMA Statement of Ethics

42.    The American Marketing Association ("AMA") "commits itself to promoting the highest standard of professional ethical norms and values. . . ."[6] As such, it has published its "Statement of Ethics." _Id._ AMA states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers . . .)." _Id._ Thus, the Statement of Ethics contains "Ethical Norms," which "are established standards of conduct that are expected and maintained by society and/or professional organizations." _Id._

43.    The AMA's Ethical Norms state that marketers must "consciously avoid []

---

[6] **Exhibit B**, American Marketing Association Code of Conduct / AMA Statement of Ethics.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

harmful actions and omissions," "striv[e] for good faith and fair dealing," "avoid [] deception in . . . pricing, communication, and delivery of distribution," and affirm "core values" of honesty, . . . fairness [and] transparency." *Id.*

44.    By failing to disclose to consumers that the cost of delivery is more than $4 and/or by failing to disclose that Panera marks up its food prices based on if a food item is ordered in person or for pick up verses via their delivery service, and/or by misrepresenting the true cost to have Panera food delivered, Defendant violated these Ethical Norms because, among other reasons, it did not strive (nor achieve) good faith and fair dealing and did not affirm the core values of honesty, fairness and transparency.

45.    The AMA has also published "Ethical Values," which "represent the collective conception of what communities find desirable, important and morally proper." *Id.* These Ethical Values include honesty and "[h]onoring our explicit and implicit commitments and promises."

46.    By charging consumers more than the $4 advertised price to have Panera food delivered, Defendant violated the aforementioned Ethical Values, because, among other reasons, it did not honor its explicit and implicit commitments and promises.

**F.    Plaintiff's Experience**

47.    Plaintiff used the Panera app to make a purchase of food on October 28, 2020, in the total amount of $46.33.

48.    When using the app, and prior to placing her order, the Panera app stated that the Delivery Fee was $4.

49.    However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup, in the form of food prices inflated by 5%-7%.

50.    Upon information and belief, had Plaintiff ordered the same food and picked it up, there should have been a difference in price of $4. Instead, Plaintiff paid more than $4 to have the same Panera food delivered to her.

51.    Upon information and belief, this hidden markup is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had she picked up her

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

order in person from the Panera location.

52.    Plaintiff would not have made the purchase if she had known the Panera delivery fee was not actually $4.

53.    If she had known the true delivery fee, she would have chosen another method for receiving food from Panera or ordered food from another provider.

## CLASS ALLEGATIONS

54.    Plaintiff brings this action on behalf of herself and a Class of similarly situated persons defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Panera mobile app or website, and were assessed higher delivery charges than represented.

55.    Excluded from the Class are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff.

56.    Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

57.    **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the hundreds, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

58.    **Commonality and Predominance**:  There are questions of law or fact common to the Class, such that there is a well-defined community of interest among the members of the classes. These questions predominate over questions that may affect only individual members of

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

the classes because Panera has acted on grounds generally applicable to the classes. Such common legal or factual questions include, but are not limited to, the following:

a.     Whether during the class period, Defendant unfairly, unethically, unlawfully, and/or deceptively represented a flat fee delivery charge on food deliveries ordered through the Panera website and mobile application;

b.     Whether Defendant's alleged misconduct misled, had the tendency to mislead consumers;

c.     Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.     Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.     Whether Defendant's omissions and/or misrepresentations were material;

f.     Whether Plaintiff and members of the Class were harmed by Defendant's omissions and/or misrepresentations;

g.     Though expressly disclaiming damages under Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*., whether Plaintiff and the Class are entitled to actual, compensatory, and/or nominal damages, and the proper measure thereof;

h.     Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent flat fee, low-cost delivery on food deliveries ordered through the Panera website and mobile app.

59.     **Typicality**: Like Plaintiff, many other consumers ordered food for delivery from Panera's website or mobile app, believing delivery to be flat, low-cost based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

60.    **Adequacy of Representation**:  Plaintiff is more than an adequate representative of the Class in that Plaintiff placed a Panera order for delivery and has suffered damages as a result of Panera's unfair, unethical, unlawful, fraudulent, and/or deceptive conduct. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b) Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

61.    It is impracticable to bring members' of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

62.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Panera's website and mobile app; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

63.    Specifically, Defendant should be ordered to cease from representing their delivery service as flat, low-cost and to disclose the true nature of their mark-ups.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

64.    Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

65.    A class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

<u>**CAUSES OF ACTION**</u>

<u>**FIRST CLAIM FOR RELIEF**</u>

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

66.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

68.    Panera's deceptive conduct related to material omissions and/or material misrepresentations that it provides a flat fee, low cost delivery charge on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

69.    The UCL imposes strict liability. Plaintiff need not prove that Panera intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

70.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

71.    Defendant's practices as described herein are (a) immoral, unethical, oppressive,

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

and/or unscrupulous and violate established public policy as recognized by, *inter alia*, the American Marketing Association; and (b) cause injury to consumers which outweigh any purported benefits or utility.

72.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

73.    Defendant's practices, as described herein, constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers, who expect that cost to have Panera food delivered is fully disclosed and reflected in the represented delivery fee.  On the media on which Defendant communicated to consumer as they were ordering food for delivery, Defendant concealed the material fact that the cost to have Panera food delivered exceeds the $4 represented and that it maintained a different, less expensive food price list for food ordered for in person dining or for in person pick up.

74.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

75.    Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

(a)  Violating Cal. Civ. Code § 1750, *et seq.*;

(b)  Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct; and/or

(c)  Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits.

76.    Panera committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it provides flat fee, low cost delivery charge for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

77.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

78.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

79.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5), (a)(9), (a)(14), (a)(16), and/or (a)(19) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Panera deceptively represents that it provides a flat fee, low cost delivery charge for food orders made on its website or mobile app; in reality, however, this marketing message is false because Panera's use of the delivery service causes an increase in food prices.

80.    Panera's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

81.    Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Panera food delivery service in ordering food from Defendant's website or mobile app.

82.    By falsely marketing flat, low-cost delivery, Panera deceived Plaintiff and Class members into making online / mobile app food purchases they otherwise would not make.

83.    Had Plaintiff known the truth of the delivery service fee, *i.e.,* that Panera's hidden food markups were in all reality "delivery fees," she would have chosen another method for receiving food from Panera or ordered food from another provider.

84.    As a direct and proximate result of Panera's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that delivery is $4.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

85.    As a result of its unfair, fraudulent, and unlawful conduct, Panera has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

## SECOND CLAIM FOR RELIEF

**Violation of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code § 1750,** *et seq.*

86.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

87.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.

88.    Plaintiff has filed concurrently with Plaintiff's Petition Plaintiff's declaration of venue required by Civil Code Section 1780(d), which is attached hereto as **Exhibit A**.

89.    Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d).

90.    Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of California Civil Code § 1761(e).

91.    Defendant's mobile app and/or online delivery service utilized by Plaintiff and the Class is a "service" within the meaning of California Civil Code § 1761(b).

92.    The food products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

93.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Panera food orders for delivery:

a.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9);

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

and/or

c.    "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve" (a)(14);

d.     "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (a)(16);

e.    Inserting an unconscionable provision in the contract (a)(19); and/or

f.    For other such violations of the CLRA that discovery will uncover.

94.    Specifically, Panera violates each of these provisions by advertising to customers that use of its delivery service is a flat fee, but this is false because Defendant imposes hidden delivery charges to consumers through secretly marking up food items applied exclusively for delivery orders.

95.    Furthermore, Defendant's practices violate (a)(19) as well because they are unconscionable in that they violate established ethical standards.

96.    At no time does Panera disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

97.    Under the CLRA, a plaintiff may without prior notification file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, Plaintiff may amend Plaintiff's CLRA causes of action without leave of court to add claims for damages.

98.    Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

99.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.

100.    If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend Plaintiff's Petition to pursue claims for actual and statutory damages, as appropriate against Defendant.

101.    By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

102.    As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

### THIRD CLAIM FOR RELIEF

**Violation of the Missouri Merchandising Practices Act ("MMPA"),**

**MO. REV. STAT. § 407.020**

103.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

104.    The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, states in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice.

105.    Defendant is a "person" within the meaning of the Missouri Merchandising Practices Act, Mo. Rev. Stat 407.010(4).

106.    The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate, or services. Mo. Rev. Stat. § 407.010. Thus, the food delivery service that the Defendant provides to its customers are merchandise.

107.    Defendant's website is an "advertisement" as that term is defined by Missouri regulations.  Mo. Code Regs. Tit. 15, 60-7.020(1)(A).

108.    In providing food delivery services to its customers, Defendant is engaging in the sale of merchandise in trade or commerce.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

109.    The actions of Defendant alleged herein violated, and continue to violate, the Missouri Merchandising Practices Act because they constitute unfair practices, deception, fraud, false promise, misrepresentation, and/or the concealment, suppression, and/or omission of material fact in the connection with the sale or advertisement of any merchandise in trade or commerce.

110.    The Missouri Attorney General has promulgated regulations defining the meaning of unfair practice as used in the MMPA.  Missouri regulations define "unfair practice" pursuant to the MMPA as any practice that "[o]ffends any public policy as it has been established … by the Federal Trade Commissions … or [i]s unethical …. [and] [p]resents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. Tit. 15, 60-8.020.

111.    Missouri case law provides that the MMPA's "literal words cover *every practice imaginable and every unfairness to whatever degree*." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). Furthermore, the statute's "plain and ordinary meaning of the words themselves . . . are unrestricted, all-encompassing and exceedingly broad." *Id.* at 240.

112.    Defendant's practices in charging more for shipping and delivery than what it represents and Defendant's practices in omitting that it charges more than $4 to have its food delivered violates the MMPA because, among other things, the practices are unethical, including but not limited to violating the principles of the American Marketing Association, as set forth above.

113.    Pursuant to the MMPA, Defendant has a duty not to engage in any unethical or unfair practice in connection with the sale or advertisement of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

114.    Missouri regulations also provide that "[a] seller shall not make a representation or statement of fact in an advertisement that is false or has the capacity to mislead prospective purchases." Mo. Code Regs. Tit. 15, 60-7.020(1).

115.    Further, Missouri regulations provide: "It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

in order to make statements made, in light of the circumstances under which they are made, not misleading." Mo. Code Regs. Tit. 15, 60-9.090.

116.    Missouri regulations provide:

(3) Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her.

(4)  Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1., RSMo. Mo. Code Regs. Tit. 15, 60-9.110.

117.    Defendant's practice of charging more than $4 to have Panera food delivered is a deceptive practice in violation of the MMPA because it is false or has the capacity to deceive.

118.    Defendant's practice of charging more for delivery than the amount advertised without disclosing that fact to consumers and without telling consumers that it maintains prices for food that are less expensive when opting to dine in person or pick up the food on his or her own violates the MMPA as an omission of material fact.

119.    Plaintiff, on behalf of herself and all other Class members similarly situated in Missouri, is entitled to bring this action pursuant to Mo. Rev. Stat. § 407.025, which provides in relevant part that:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.
>
> […]
>
> Persons entitled to bring an action pursuant to subsection 1 of this section may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class . . . . In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

120.    Plaintiff and the Class have suffered ascertainable loss due to defendant's unlawful practices as described herein.  Specifically, this loss is the amount that Plaintiff and the Class paid for delivery of the food in excess of the $4 advertised. This amount is measured by at least the difference between the food prices charged when dining in person, or ordering and picking up food in person and the food prices charged when ordering food and having it delivered by Panera.

121.    As described above, Plaintiff acted as a reasonable consumer would in light of all circumstances.

122.    Defendant's unlawful methods, acts, and/or practices would cause a reasonable person to enter into the transaction that resulted in damages and did so cause Plaintiff, a reasonable person to enter into the transaction that resulted in damages.

123.    Plaintiff and the Class' claims show a likelihood that Defendant's unlawful method, act, and/or practice would mislead a reasonable consumer.

124.    Defendant's acts and practices alleged herein have directly, foreseeably, and proximately caused loss, damages, and injury to Plaintiff and the Class in an amount to be determined at trial.

125.    Defendant's unlawful acts and practices in violation of the MMPA were performed willfully and wantonly, were outrageous, and were done in reckless indifference to the rights of Plaintiff and Class, violating the MMPA.

126.    Injunctive relief is necessary and proper to compel Defendant to cease its violations of the MMPA alleged herein. As such, in addition to damages, Plaintiff seeks such equitable relief as the Court deems necessary or proper to protect Plaintiff and the Class Members from the methods, acts, or practices declared unlawful by the MMPA.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff on behalf of herself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a)    For an order enjoining Defendant from continuing the unlawful practices set forth above;

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

(b)    Though expressly disclaiming damages under the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*, an order awarding restitution, disgorgement, actual damages, statutory damages, under applicable law, and compensatory damages in an amount to be determined at trial;

(c)    For declaratory and injunctive relief as set forth above;

(d)    Though expressly disclaiming damages under the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*, for an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e)    For reasonable attorneys' fees and costs of suit;

(f)    For pre-judgment interest; and

(g)    Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated:  February 8, 2021         By:   /s/         Tiffany M. Yiatras
                                      Tiffany M. Yiatras (MO Bar No. 58197)
                                      **CONSUMER PROTECTION LEGAL, LLC**
                                      308 Hutchinson Road
                                      Ellisville, Missouri 63011-2029
                                      Tele: 314-541-0317
                                      Email: tiffany@consumerprotectionlegal.com

                                      Jeffrey Kaliel (to seek admission Pro Hac Vice)
                                      Sophia Gold (to seek admission Pro Hac Vice)
                                      **KALIEL, PLLC**
                                      1875 Connecticut Avenue NW, 10th Floor
                                      Washington, DC 20009
                                      Tele: (202) 350-4783
                                      Email: jkaliel@kalielpllc.com
                                      Email: sgold@kalielpllc.com

                                      **ATTORNEYS FOR PLAINTIFF**
                                      **AND THE PROPOSED CLASS**

21SL-CC00593

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

# EXHIBIT A

DocuSign Envelope ID: 856B9AF6-2965-4950-89FA-7635308E6B41

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

**IN THE CIRCUIT COURT**
**OF ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| MAHASIN AHMAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>      vs.<br><br>  PANERA BREAD COMPANY,<br><br>      3630 South Geyer Road<br>      Suite 100,<br>      St. Louis, Missouri, 63127<br><br>      Defendant. | **Case No.**<br>Division No.<br><br>**JURY TRIAL DEMANDED** |

**CALIFORNIA CIVIL CODE § 1780(D)**
**VENUE AFFIDAVIT OF MAHANSIN AHMAD**

I, MAHASIN AHMAD, declare as follows:

1.      I am the Plaintiff in the above captioned action.

2.      I make this Affidavit pursuant to California Civil Code § 1780(d) and in support of PLAINTIFF'S CLASS ACTION PETITION, which alleges, *inter alia*, violations of the Consumer Legal Remedies Act, California Civil Code Section 1780, *et seq.* for injunctive relief only.

3.      This action is brought in the Circuit Court of St. Louis County,

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

Missouri.

4.     St. Louis County, Missouri is the county in which the Defendant (a) resides; (b) has its principal place of business; and (c) is doing business.

5.  In particular, Defendant's principal place of business is located at:

Panera Bread Company
3630 South Geyer Road, Suite 100
St. Louis, Missouri  63127

6.     Furthermore, (a) Defendant has its headquarters located in St. Louis County, Missouri; and (b) Defendant has restaurants located in St. Louis County, Missouri.

7.     I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct to the best of my knowledge.

By: _____
         *Mahasin Ahmad*
         6939C9849CFC4CE...
         **MAHASIN AHMAD**

21SL-CC00593

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

# EXHIBIT B

Codes of Conduct | AMA Statement of Ethics

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM



# Codes of Conduct | AMA Statement of Ethics

## Statement of Ethics

### Preamble

The American Marketing Association commits itself to promoting the highest standard of professional ethical norms and values for its members (practitioners, academics and students). Norms are established standards of conduct that are expected and maintained by society and/or professional organizations. Values represent the collective conception of what communities find desirable, important and morally proper. Values also serve as the criteria for evaluating our own personal actions and the actions of others. As marketers, we recognize that we not only serve our organizations but also act as stewards of society in creating, facilitating and executing the transactions that are part of the greater economy. In this role, marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers, employees, investors, peers, channel members, regulators and the host community).

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM
Codes of Conduct AMA Statement of Ethics

# Ethical Norms

As Marketers, we must:

1. Do no harm. This means consciously avoiding harmful actions or omissions by embodying high ethical standards and adhering to all applicable laws and regulations in the choices we make.
2. Foster trust in the marketing system. This means striving for good faith and fair dealing so as to contribute toward the efficacy of the exchange process as well as avoiding deception in product design, pricing, communication, and delivery of distribution.
3. Embrace ethical values. This means building relationships and enhancing consumer confidence in the integrity of marketing by affirming these core values: honesty, responsibility, fairness, respect, transparency and citizenship.

# Ethical Values

Honesty – to be forthright in dealings with customers and stakeholders.  To this end, we will:

- Strive to be truthful in all situations and at all times.
- Offer products of value that do what we claim in our communications.
- Stand behind our products if they fail to deliver their claimed benefits.
- Honor our explicit and implicit commitments and promises.

Responsibility – to accept the consequences of our marketing decisions and strategies.  To this end, we will:

- Strive to serve the needs of customers.
- Avoid using coercion with all stakeholders.
- Acknowledge the social obligations to stakeholders that come with increased marketing and economic power.
- Recognize our special commitments to vulnerable market segments such as children, seniors, the economically impoverished, market illiterates and others who may be substantially disadvantaged.

Codes of Conduct | AMA Statement of Ethics

- Consider environmental stewardship in our decision-making.

Fairness – to balance justly the needs of the buyer with the interests of the seller.  To this end, we will:

- Represent products in a clear way in selling, advertising and other forms of communication; this includes the avoidance of false, misleading and deceptive promotion.
- Reject manipulations and sales tactics that harm customer trust.
- Refuse to engage in price fixing, predatory pricing, price gouging or "bait-and-switch" tactics.
- Avoid knowing participation in conflicts of interest.
- Seek to protect the private information of customers, employees and partners.

Respect – to acknowledge the basic human dignity of all stakeholders.  To this end, we will:

- Value individual differences and avoid stereotyping customers or depicting demographic groups (e.g., gender, race, sexual orientation) in a negative or dehumanizing way.
- Listen to the needs of customers and make all reasonable efforts to monitor and improve their satisfaction on an ongoing basis.
- Make every effort to understand and respectfully treat buyers, suppliers, intermediaries and distributors from all cultures.
- Acknowledge the contributions of others, such as consultants, employees and coworkers, to marketing endeavors.
- Treat everyone, including our competitors, as we would wish to be treated.

Transparency – to create a spirit of openness in marketing operations. To this end, we will:

- Strive to communicate clearly with all constituencies.
- Accept constructive criticism from customers and other stakeholders.
- Explain and take appropriate action regarding significant product or service risks, component substitutions or other foreseeable

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

eventualities that could affect customers or their perception of the purchase decision.
- Disclose list prices and terms of financing as well as available price deals and adjustments.

Citizenship – to fulfill the economic, legal, philanthropic and societal responsibilities that serve stakeholders. To this end, we will:

- Strive to protect the ecological environment in the execution of marketing campaigns.
- Give back to the community through volunteerism and charitable donations.
- Contribute to the overall betterment of marketing and its reputation.
- Urge supply chain members to ensure that trade is fair for all participants, including producers in developing countries.

## Implementation

We expect AMA members to be courageous and proactive in leading and/or aiding their organizations in the fulfillment of the explicit and implicit promises made to those stakeholders. We recognize that every industry sector and marketing sub-discipline (e.g., marketing research, digital marketing, direct marketing, and advertising) has its own specific ethical issues that require policies and commentary. An array of such codes can be accessed through links on the AMA Web site. Consistent with the principle of subsidiarity (solving issues at the level where the expertise resides), we encourage all such groups to develop and/or refine their industry and discipline-specific codes of ethics to supplement these guiding ethical norms and values.

## Sexual or Personal Harassment Policy

Sexual harassment is any conduct, comment, gesture or contact of a sexual nature that is unwanted or unwelcome by any individual, or that might reasonably be perceived by that individual as placing a condition of a sexual nature on any AMA-related activity.

Personal harassment is any conduct, verbal or physical, that is discriminatory in nature, based upon another person's race, color, ancestry, place of origin, political beliefs, religion, marital status, physical or mental disability, sex, age or sexual orientation.  Personal harassment includes but is not limited to discriminatory or other behavior, directed at an individual, that is unwanted or unwelcome and causes substantial distress in that individual and serves no legitimate AMA-related purpose.

The AMA does not tolerate sexual or personal harassment, including at its events.  Sexual or personal harassment in any form is strictly prohibited and may be grounds for suspension or termination as an officer, director or member of AMA.

## Conflict of Interest Policy

## Article 1

*Purpose:*

The purpose of the Conflict of Interest Policy is to protect the interests of American Marketing Association (the "Corporation") when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer or director of the Corporation or might result in a possible excess benefit transaction.   This policy is intended to

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

Codes of Conduct (AMA) Statement of Ethics
Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

supplement but not replace any applicable state and federal laws
governing conflict of interest applicable to non-profit and charitable
organizations.

# Article 2

*Definitions:*

1.   Interested Person.
Any director, principal officer, or member of a committee with governing
board delegated powers, who has a direct or indirect financial interest, as
defined below, is an interested person.

2.   Financial interest.
A person has a financial interest if the person has, directly or indirectly,
through business, investment, or family:a.   An ownership or investment
interest in any entity with which the Corporation has a transaction or
arrangement;
b.   A compensation arrangement with the Corporation or with any entity or
individual with which the Corporation has a transaction or arrangement; or
c.   A potential ownership or investment interest in, or compensation
arrangement with, any entity or individual with which the Corporation is
negotiating a transaction or arrangement.Compensation includes direct
and indirect remuneration as well as gifts or favors that are not
insubstantial.
A financial interest is not necessarily a Conflict of Interest.  Under Article 3,
Section 2, a person who has a financial interest may have a conflict of
interest only if the appropriate governing Board or Committee decides that
a conflict of interest exists.

Codes of Conduct | AMA Statement of Ethics

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

# Article 3

*Procedures:*

1.    Duty to Disclose.

In connection with any actual or possible Conflict of Interest, an interested person must disclose the existence of the financial interest and be given the opportunity to disclose all material facts to the directors and members of committees with governing board delegated powers considering the proposed transaction or arrangement.

2.    Determining Whether a Conflict of Interest Exists.

After disclosure of the financial interest and all material facts, and after any discussion with the interested person, he/she shall leave the governing board or committee meeting while the determination of a conflict of interest is discussed and voted upon.  The remaining board or committee members shall decide if a conflict of interest exists.

3.    Procedures for Addressing the Conflict of Interest.

a.    An interested person may make a presentation at the governing board or committee meeting, but after the presentation, he/she shall leave the meeting during the discussion of, and the vote on, the transaction or arrangement involving the possible conflict of interest.

b.    The chairperson of the governing board or committee shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

c.    After exercising due diligence, the governing board or committee shall determine whether the Corporation can obtain with reasonable efforts a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.

Case: 4:21-cv-00311-CDP    Doc. #: 1-1    Filed: 03/11/21    Page: 36 of 56 PageID #: 46

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

d.    If a more advantageous transaction or arrangement is not reasonably possible under circumstances not producing a conflict of interest, the governing board or committee shall determine by a majority vote of the disinterested directors whether the transaction or arrangement is in the Corporation's best interest, for its own benefit, and whether it is fair and reasonable.  In conformity with the above determination it shall make its decision as to whether to enter into the transaction or arrangement.

4.    Violations of the Conflict of Interest Policy.a.    If the governing board or committee has reasonable cause to believe a member has failed to disclose an actual or possible conflict of interest, it shall inform the member of the basis for such belief and afford the member an opportunity to explain the alleged failure to disclose.

b.    If, after hearing the member's response and after making further investigation as warranted by the circumstances, the governing board or committee determines the member has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

# Article 4

*Records of Proceedings:*

The minutes of the governing board and all committees with board delegated powers shall contain:a.    The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the governing board's or committee's decision as to whether a conflict of interest in fact existed.

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

b.    The names of the persons who were present, in person or participating remotely, for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## Article 5

*Compensation:*

A voting member of the governing board who receives compensation, directly or indirectly, from the Corporation for services is precluded from voting on matters pertaining to that member's compensation.

A voting member of any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Corporation for services is precluded from voting on matters pertaining to that member's compensation.

No voting member of the governing board or any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Corporation, either individually or collectively, is prohibited from providing information to any committee regarding compensation.

## Article 6

*Annual Statements:*

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

Each director, principal officer and member of a committee with governing board delegated powers shall annually sign a statement which affirms such person:a.    Has received a copy of the Conflict of Interest Policy;

b.    Has read and understands the Conflict of Interest Policy;

c.    Has agreed to comply with the Conflict of Interest Policy; and

d.    Understands the Corporation is charitable and in order to maintain its federal tax exemption it must engage primarily in activities which accomplish one or more of its tax-exempt purposes.

# Article 7

*Periodic Reviews:*

To ensure the Corporation operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-exempt status, periodic reviews shall be conducted. The periodic reviews shall, at a minimum, include the following subjects:a.    Whether compensation arrangements and benefits are reasonable, based on competent survey information and the result of arm's length bargaining; and

b.    Whether partnerships, joint ventures, and arrangements with management organizations conform to the Corporation's written policies, are properly recorded, reflect reasonable investment or payments for goods and services, further charitable purposes and do not result in inurement, impermissible private benefit or in an excess benefit transaction.

# Article 8

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

*Use of Outside Experts:*

When conducting the periodic reviews as provided for in Article 7, the Corporation may, but need not, use outside advisors. If outside experts are used, their use shall not relieve the governing board of its responsibility for ensuring that periodic reviews are conducted.

Find more information on AMA's Code of Conduct at the AMA Community Help pages

Learn about the AMA's Commitment to Conference Safety at the AMA Community Help pages



JOIN AMA

ABOUT AMA

CONTACT US

TERMS OF USE

PRIVACY POLICY

MARKETING SERVICES SEARCH

CODES OF CONDUCT

FAQ

MEDIA KIT

Electronically Filed - St Louis County - February 08, 2021 - 08:19 PM

CERTIFICATION PORTAL

TOOLKITS

JOB BOARDS

CAREER RESOURCES

© 2021 American Marketing Association. This site content may not be copied, reproduced, or redistributed without the prior written permission of the American Marketing Association or its affiliates.



**21SL-CC00593**

Electronically Filed - St Louis County - February 08, 2021 - 08:25 PM

**IN THE CIRCUIT COURT**
**OF ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| MAHASIN AHMAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PANERA BREAD COMPANY,<br><br>3630 South Geyer Road<br>Suite 100,<br>St. Louis, Missouri, 63127<br><br>Defendant. | **Case No.**<br>Division No.<br><br>**JURY TRIAL DEMANDED** |

**NOTICE OF APPEARANCE**

PLEASE TAKE NOTICE THAT, in the above-captioned litigation, Tiffany Marko Yiatras of the law firm of Consumer Protection Legal, LLC, enters her appearance as counsel on behalf of Plaintiff, Mahasin Ahmad, individually and on behalf of all others similarly situated, and requests that copies of all future notices, pleadings, and other documents filed in this action be provided to her.

Dated:  February 8, 2021         By:   /s/   Tiffany M. Yiatras
                                            Tiffany M. Yiatras (MO Bar No. 58197)
                                            **CONSUMER PROTECTION LEGAL, LLC**
                                            308 Hutchinson Road
                                            Ellisville, Missouri 63011-2029
                                            Tele: 314-541-0317
                                            Email: tiffany@consumerprotectionlegal.com

                                            **ATTORNEYS FOR PLAINTIFF AND THE**
                                            **PROPOSED CLASSES**

1

Electronically Filed - St Louis County - February 08, 2021 - 08:25 PM

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>February 8, 2021</u>, I electronically filed the foregoing with the Clerk

of the Court and served same electronically on all counsel of record.

<u>    /s/       Tiffany M. Yiatras     </u>

**21SL-CC00593**

Electronically Filed - St Louis County - February 08, 2021 - 08:30 PM

**IN THE CIRCUIT COURT
OF ST. LOUIS COUNTY, MISSOURI**

MAHASIN AHMAD, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

PANERA BREAD COMPANY,

   3630 South Geyer Road
Suite 100,
St. Louis, Missouri, 63127

     Defendant.

**Case No.**
Division No.

**JURY TRIAL DEMANDED**

**REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER**

COME NOW, Plaintiff/Petitioner, MAHASIN AHMAD, individually and on behalf of

all others similarly situated, and requests that:

Lousika Legal Courier, LLC
308 Hutchinson Road
Ellisville, Missouri 63011

be appointed as Special Process Server in this cause to serve the Class Action Petition and

summons on the following defendant:

Panera Bread Company
3630 South Geyer Road
Suite 100
St. Louis, Missouri, 63127

    Neither Lousika Legal Courier, LLC, nor its member, is a party to the action.

Dated:  February 8, 2021      By:  /s/   Tiffany M. Yiatras
                  Tiffany M. Yiatras (MO Bar No. 58197)
                  **CONSUMER PROTECTION LEGAL, LLC**
                  308 Hutchinson Road
                  Ellisville, Missouri 63011-2029

Electronically Filed - St Louis County - February 08, 2021 - 08:30 PM

Tele: 314-541-0317
Email: tiffany@consumerprotectionlegal.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on <u>February 8, 2021</u>, I electronically filed the foregoing with the Clerk of the Court and served same electronically on all counsel of record.

<u>        /s/       Tiffany M. Yiatras        </u>

2

Electronically Filed - St Louis County - February 10, 2021 - 01:11 PM

**In the**
# CIRCUIT COURT
## Of St. Louis County, Missouri

MAHASIN AHMAD, individually and on behalf
of all others similarly situated
Plaintiff/Petitioner

vs.

PANERA BREAD COMPANY
Defendant/Respondent

For File Stamp Only

2/10/2021
Date

21SL-CC00593
Case Number

7
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  MAHASIN AHMAD                                                   , pursuant
                        Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
Lousika Legal Courier, LLC          308 Hutchinson Road  Ellisville, MO 63011   314-541-3565
Name of Process Server            Address                              Telephone

Name of Process Server            Address or in the Alternative          Telephone

Name of Process Server            Address or in the Alternative          Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
   PANERA BREAD COMPANY
Name                                            Name
   3630 South Geyer Road, Suite 100
Address   St. Louis, Missouri  63127            Address
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:

Name                                            Name

Address                                         Address

City/State/Zip                                  City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By _____                  Signature of Attorney/Plaintiff/Petitioner
   Deputy Clerk                                        #58197
                                                Bar No.
                                                 308 Hutchinson Road
                                                Address
_____                     Ellisville, Missouri  63011-2029 1-855-710-7706
Date                                            Phone No.                          Fax No.

CCADM62-WS   Rev. 08/16      WHITE – File      YELLOW-Special Process Server      PINK - Attorney/Petitioner

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - St Louis County - February 10, 2021 - 01:11 PM

Electronically Filed - St Louis County - February 10, 2021 - 01:11 PM

**In the**

# CIRCUIT COURT

## Of St. Louis County, Missouri

MAHASIN AHMAD, individually and on behalf
of all others similarly situated
Plaintiff/Petitioner

For File Stamp Only

vs.

| | |
|---|---|
| 2/10/2021 | |
| Date | |
| 21SL-CC00593 | |
| Case Number | |
| 7 | |
| Division | |

PANERA BREAD COMPANY
Defendant/Respondent

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  MAHASIN AHMAD                                    , pursuant
                              Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
Lousika Legal Courier, LLC          308 Hutchinson Road  Ellisville, MO 63011   314-541-3565
Name of Process Server          Address          Telephone

_____
Name of Process Server          Address or in the Alternative          Telephone

_____
Name of Process Server          Address or in the Alternative          Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
    PANERA BREAD COMPANY
Name                                            Name
    3630 South Geyer Road, Suite 100
Address    St. Louis, Missouri  63127           Address
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:

Name                                            Name

Address                                         Address

City/State/Zip                                  City/State/Zip

Appointed as requested:

**JOAN M. GILMER**, Circuit Clerk

By  /s/Molly Thal                               Signature of Attorney/Plaintiff/Petitioner
Deputy Clerk                                        #58197
                                                Bar No.
02/10/2021                                       308 Hutchinson Road
Date                                            Address
                                                Ellisville, Missouri  63011-2029 1-855-710-7706
                                                Phone No.                    Fax No.

CCADM62-WS   Rev. 08/16      WHITE –File      YELLOW-Special Process Server      PINK - Attorney/Petitioner

Electronically Filed - St Louis County - February 10, 2021 - 01:11 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>MARY ELIZABETH OTT | Case Number:  21SL-CC00593 |
|---|---|
| Plaintiff/Petitioner:<br>MAHASIN AHMAD | Plaintiff's/Petitioner's Attorney/Address<br>TIFFANY MARKO YIATRAS<br>CONSUMER PROTECTION LEGAL, LLC<br>308 HUTCHINSON ROAD<br>ELLISVILLE, MO  630112029 |
| vs. | |
| Defendant/Respondent:<br> PANERA BREAD COMPANY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:**  **PANERA BREAD COMPANY**
                        **Alias:**

**3630 SOUTH GEYER ROAD**
**SUITE 100**
**ST. LOUIS, MO  63127**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

   **You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**
   **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>**10-FEB-2021**</u>
  **Date**

                   _____
                      **Clerk**

  **Further Information:**
  **MT**

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____(title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____   _____
  Printed Name of Sheriff or Server          Signature of Sheriff or Server
     **Must be sworn before a notary public if not served by an authorized officer:**

      Subscribed and sworn to before me on _____ (date).

 *(Seal)*

      My commission expires: _____  _____
               Date           Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: MARY ELIZABETH OTT | Case Number: 21SL-CC00593 |
|---|---|
| Plaintiff/Petitioner: MAHASIN AHMAD | Plaintiff's/Petitioner's Attorney/Address TIFFANY MARKO YIATRAS CONSUMER PROTECTION LEGAL, LLC 308 HUTCHINSON ROAD ELLISVILLE, MO 630112029 |
| Defendant/Respondent: PANERA BREAD COMPANY | Court Address: ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit: CC Other Tort | 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105    (Date File Stamp) |

*vs.*

## Summons in Civil Case

**The State of Missouri to: PANERA BREAD COMPANY**
**Alias:**

3630 SOUTH GEYER ROAD
SUITE 100
ST. LOUIS, MO 63127

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
**SPECIAL NEEDS:** If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

10-FEB-2021
**Date**

_____
**Clerk**

**Further Information:**
MT

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
REEVA HENDRICKS (name) RECEPTIONIST (title).
☐ other _____
Served at 3630 SOUTH GEYER ROAD SUITE 100 ST. LOUIS 63127 (address)
in COUNTY (County of St. Louis), MO, on FEB. 11, 2021 (date) at 12:35 p.m. (time).
HARRY YIATRAS                     Harry Yiatras
**Printed Name of Server**                     **Signature of Server**

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on Feb 11, 2021 (date).
My commission expires: 08-09-24               Megan Just
**Date**                                       **Notary Public**

*[Notary Seal: MEGAN JUST Notary Public Commission #16942978 St. Louis County Notary Seal STATE OF MISSOURI My Commission Expires 08-09-2024]*

Electronically Filed - St Louis County - February 12, 2021 - 09:49 AM

Electronically Filed - St. Louis County - February 12, 2021 - 09:49 AM

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - St. Louis County - February 12, 2021 - 09:49 AM

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

Electronically Filed - St. Louis County - February 12, 2021 - 09:49 AM

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73