IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAHASIN AHMAD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>PANERA BREAD COMPANY,<br><br>    Defendant. | Case No. 4:21-cv-311 |

**DEFENDANT PANERA BREAD COMPANY'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Five months ago, Plaintiff Mahasin Ahmad ("Plaintiff"), a resident of California, used her Panera, LLC[1] mobile app to order food and have it delivered.  The food she ordered was delivered at the price she agreed to pay, including a $4 fee for the delivery service.  Now, Plaintiff claims this simple transaction is riddled with fraud and deception under two states' consumer protection laws and invites this Court to micromanage the pricing of everyday transactions.  The Court should decline Plaintiff's invitation.

Plaintiff purports to bring a putative class action lawsuit based on an alleged 5-10% price markup between delivered food and food that is purchased for in-store pickup, which Plaintiff contends makes the $4 <u>delivery fee</u> charged false and deceptive.  Independent of the many legal reasons requiring dismissal, Plaintiff's theory fails under her own allegations.  Plaintiff admits that the fee to receive the delivered food, not the food itself, was and is exactly as represented—$4.  Compl. ¶27.  She does not plead any other representation made about the cost of her food or about the delivery fee itself.  She in fact pleads that she received what she bargained for—delivered food

---

[1] Plaintiff improperly names Panera Bread Company as the defendant in this case.  Panera, LLC is the proper party.

at the price she accepted.  *Id.* at ¶47.  And, Plaintiff could have readily ascertained any alleged price differential with the click of a button.  These claims do not plausibly amount to three separate violations of the Missouri Merchandising Practices Act ("MMPA"), California's Unfair Competition Law ("UCL"), and California's Consumers Legal Remedies Act ("CLRA"), and should be dismissed for multiple reasons.

*First*, Missouri law does not compel identical products to be sold at the same price.  This is precisely because "courts are not regulators of the fair market price of products."  *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).  No reasonable consumer would be misled by what a "delivery fee" is or interpret it to imply anything about the cost of the delivered food.  Further, Plaintiff received exactly what she bargained for and has no ascertainable loss.  She likewise fails to establish that her food order was primarily for personal, family, or household use and not for purposes of litigation.

*Second*, Plaintiff clearly assented to Panera's Terms of Use when she accessed Panera's app, when she ordered her food, and when she signed up to join MyPanera, a membership and rewards program.  Those Terms of Use contain a choice-of-law clause that applies Missouri law to her claims, not California law.  Her claims under the CLRA and UCL are therefore improper and subject to dismissal.

*Third*, even if Plaintiff could assert her California claims, they merit a similar result as under the MMPA.  Panera had no duty to disclose any alleged price difference between its delivered food and non-delivered food.  No reasonable consumer would be deceived by the omission of a fact that was not required to be disclosed in the first place.

Plaintiff's Complaint should be dismissed with prejudice.

## BACKGROUND

Panera is a bakery-café fast casual restaurant headquartered in St. Louis, Missouri. Compl. ¶14. In addition to its full menu of freshly prepared, wholesome meals offered in a café environment, Panera offers a delivery service to its customers. *Id.* With locations across the United States, Panera, like many other restaurants, has played a critical role in providing and delivering food to many during the COVID-19 pandemic. *Id.* at ¶19.

On October 28, 2020, Plaintiff, a resident of Rancho Cucamonga, California, opened her Panera application ("app") and selected the café food she wished to purchase for delivery at the price displayed to her. Compl. ¶¶13, 47. Plaintiff selected food for delivery totaling $46.33. *Id.* at ¶47. The penultimate screen shown to her before she finalized the purchase stated:

>  Subtotal:       $41.03
>  Delivery Fee:   $4.00
>  Taxes:          $1.30
>  Total:          $46.33

*Id.* at ¶27. In the app, Panera's Terms of Use[2] ("Terms") were hyperlinked on the home screen menu bar. *See* **Exhibit A**, Terms of Use, attached hereto. Plaintiff admits that customers who download the Panera app or visit the website to order food are told that Terms of Use apply and that the terms are available in a hyperlink. *Id.* at ¶23. Moreover, Plaintiff is a MyPanera account holder and member. Upon signing up for her MyPanera account, she agreed that when she clicked "Join Now," she assented to Panera's Terms—terms which were hyperlinked and available for her to review. *Id.* at ¶23. The Terms are also available on each page of Panera's website.

The Terms that Plaintiff agreed to and in effect at the time she used the app and placed her order very clearly advise that they apply to the access and use of Panera's website and app:

---

[2] The Court can consider the Terms of Use in evaluating Panera's Rule 12(b)(6) motion because they are referenced in the Complaint. *Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401, 406-07 (8th Cir. 2017). *See* Compl. ¶¶21-23.

> **Scope and Updates**
>
> Welcome to Panera Bread. The following terms, as updated from time to time (collectively, the "Terms") govern your access to and use of all or part of www.panerabread.com, mobile.panerabread.com, and any other authorized websites, mobile applications, in-store kiosks or other online services, tools or programs where these Terms appear (collectively, the "Services"). The Services are provided by Panera Bread Company or one of its affiliated or subsidiary companies (collectively, or individually, as the case may be, "Panera"). By visiting or using the Services, you expressly agree to these Terms. We may change or modify these Terms from time to time and will post the updated Terms with a "Last Updated" effective date of the revision. Any changes or modifications will be effective immediately upon posting of the changes or modifications, and you waive any right you may have to receive specific notice of such changes or modifications, and to the extent permitted by law you waive any right you may have to receive specific notice of such changes or modifications. Your continued access to, use of and/or participation in the Services after these Terms have been changed or modified (see Last Updated date above) signifies your acceptance of any updated Terms. As a result, you should frequently review these Terms to understand the terms and conditions that apply to your access to, use of and/or participation in the Services. If you do not agree to the changed or modified Terms, do not use the Services.

*See* Ex. A.  A green heading at the top of the Terms of Use identifies a term as "Governing Law and Jurisdiction" and includes a hyperlink to take the user immediately to the term.  *Id*.  The "Governing Law and Jurisdiction" term provides a Missouri choice-of-law clause:

> **Governing Law and Jurisdiction**
>
> Access to and use of the Services and these Terms are governed by (i) the laws of the State of Missouri, without regard to conflicts of laws principles (with respect to matters within the United States), or (ii) the laws of Ontario, Canada, without regard to conflict of laws principles (with respect to matters within Canada). Any legal action or proceeding relating to your access to or use of the Services or these Terms shall be instituted only in the federal and state courts in the State of Missouri in St. Louis County (with respect to matters within the United States) or (ii) the courts in Ontario, Canada (with respect to matters within Canada). By accessing or using the Services, you consent to submit to the jurisdiction of, and agree that venue is proper in, these courts in any such legal action of proceeding.

*Id*.  Thus, when Plaintiff used the app, when she ordered her food, and when she signed up to join MyPanera, she agreed to the Terms of Use, including that Missouri law would govern her claims. Compl. ¶47.  Thereafter, Plaintiff received the delivered food at the price quoted to her and that she agreed to pay.  *Id*. at ¶52.  Plaintiff does not allege the food was defective or otherwise unsatisfactory.  She said nothing until four months later, when she filed this putative class action lawsuit, claiming that a $4 delivery fee misrepresents the "true cost" of delivery.  *Id.* at ¶5.

According to Plaintiff, the $4 delivery fee stated on Panera's website and app is false and misleading because Panera allegedly charges a 5-10% markup on the same food available for pick-up in-store.  Compl. ¶¶4-5, 30.  Yet, Plaintiff also pleads that "the identical sandwich costs approximately $1 more when ordered for delivery than when ordered via **the same** mobile app for pickup, or when ordered in-store."  *Id.* at ¶4.  Thus, as Plaintiff acknowledges, any alleged price

- 4 -

differential is readily apparent on **the same** mobile app.  *Id.*  An alleged price difference would also be apparent by looking at the menu prices for delivered food compared with food picked up in-store.  This is simply the difference between checking the box for "delivery" or for "rapid pickup" on the website or app.

Plaintiff does not plead any other representation about the cost of the delivery service provided to her. There are no marketing materials quoted, pictured, or alleged.  Importantly, Plaintiff does not plead that Panera ever represented the food would be the same price if delivered or purchased in-store.  Plaintiff in fact pleads that the fee to receive the delivered food, not the food itself, was and is exactly as represented—$4.  Compl. ¶27.  She pleads that she received what she bargained for—delivered food at the price she accepted.  *Id.* at ¶47.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Simply alleging legal conclusions will not satisfy this standard. *Cook v. ACS State & Local Sols., Inc.*, 663 F.3d 989, 992 (8th Cir. 2011).  Nor is it enough to allege facts showing a "sheer possibility" of liability.  *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Chartis Specialty Ins. Co. v. Vaughan Foods, Inc.*, No. 4:16CV280-RLW, 2017 WL 448595, at *1 (E.D. Mo. Feb. 1, 2017) (citing *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008)).

## ARGUMENT

**I.       Plaintiff Fails to State a Claim Under the MMPA.**

To state a plausible claim under the MMPA, Plaintiff must show "(1) she purchased the merchandise in question; (2) she purchased the merchandise for personal, family, or household use; (3) she suffered an ascertainable loss; and (4) the ascertainable loss was the result of an unfair practice." *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d, 1007, 1011-12 (E.D. Mo. 2014) (citing RSMo. § 407.025). Additionally, Plaintiff's MMPA claim is subject to the statute's newly added requirement that Plaintiff show the alleged unfair practice "would mislead a reasonable consumer." RSMo. § 407.025.1(2) (2020). If Plaintiff cannot establish that a "reasonable consumer" would be misled, the MMPA instructs that a court is empowered to dismiss the claim as a matter of law. *Id.* Plaintiff's MMPA claim wholly fails because she cannot show an ascertainable loss or an unlawful act, and she does not plead facts establishing her purchase was for personal, family, or household use. Nor can she establish that a "reasonable consumer" would be misled by what a "delivery fee" is or any alleged price differential available on Panera's website.

**A. Plaintiff Has Not Alleged She Purchased the Delivered Food Primarily For Personal, Family, or Household Purposes.**

Plaintiff has failed to plead facts establishing the threshold requirement that her purchase of delivered food was "primarily for personal, family or household purposes." RSMo. § 407.025.1. The Complaint is suspiciously quiet on the facts, reasons, or situation surrounding Plaintiff's purported order. Plaintiff does not even allege in a conclusory fashion that her purchase was for personal, family, or household purposes; she only quotes the MMPA's statutory requirement that all purchases be for such use. Compl. ¶119. Plaintiff's claim stumbles at the gate and is subject to dismissal.

- 6 -

### B.  Plaintiff Does Not Plead a Plausible Unlawful Act Under the MMPA.

Pricing food for in-store pickup differently than the same food delivered is not an unlawful act under the MMPA.  "Missouri law does not compel identical products to be sold at the same price." *Schulte v. Conopco, Inc.*, No. 4:19CV2546-RWS, 2020 WL 4039221, at *4 (E.D. Mo. July 17, 2020) (appeal pending).  Price differences are permissible.  *See, e.g.*, *Aurora Dairy Corp. Organic Milk Mktg. and Sales Pracs. Litig.*, 621 F.3d 781, 788-789 (8th Cir. 2010) (noting that private label products "are typically priced lower than major brands at retail and may or may not consistently come from the same source."); *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1168 (C.D. Cal. 2014), *aff'd* 649 F. App'x 424 (9th Cir. 2016) (recognizing that price differences between the same products "do not constitute an act or statement on which to premise liability"); *Eidmann v. Walgreen Co.*, No. 5:20-cv-04805-EJD, 2021 WL 764121, at *7 (N.D. Cal. Feb. 26, 2021) (price differentials not deceptive).  This is precisely because "courts are not regulators of the fair market price of products." *Thompson*, 993 F. Supp. 2d at 1012 (dismissing MMPA claim based on the theory that if defendant included smaller quantities of eye drops, the prescriptions would be less expensive to consumers).

This Court recently rejected a similar claim under the MMPA.  In *Schulte v. Conopco, Inc.*, the plaintiff alleged that the defendant manufacturer and retailers violated the MMPA by charging more for a line of antiperspirants marketed to women than a similar line marketed to men.  2020 WL 4039221, at *4.  In dismissing Plaintiff's claim, the Court reasoned that Missouri law does not require such consistent pricing, and therefore the alleged pricing did not amount to a deceptive or unfair practice under the MMPA.  *Id.* at *6.  The Court instructed that plaintiff's pricing claims are remedied "with legislation not litigation." *Id.*[3]

---

[3] Plaintiff does not cite any authority to support her untenable position that the judiciary should impose price controls to prevent any alleged "unfair practice."  Missouri law defines an "unfair practice" under the MMPA as one that

Courts in other jurisdictions have also rejected similar consumer protection claims based on product price differences. *See, e.g., Yingst v. Novartis AG,* 63 F. Supp. 3d 412, 413 (D.N.J. 2014) (dismissing consumer protection claim against defendant for selling two of the same headache relief products at different prices); *Lokey v. CVS Pharmacy, Inc.*, No. 20CV04782-LB, 2020 WL 6822890, at *4 (N.D. Cal. Nov. 20, 2020) (dismissing consumer protection claim against defendant for selling the same fever medicine for "children" and "infants" at different prices); *Silver v. Pep Boys-Manny, Moe & Jack of Delaware, Inc.*, No. CV1700018-FLWLHG, 2018 WL 1535285, at *5 (D.N.J. Mar. 29, 2018) (dismissing consumer protection claim based on the theory that Pep Boys should have disclosed that the auto parts purchased in-store were available on the website at lower prices). Plaintiff's MMPA claims for omission and misrepresentation are premised on this alleged price differential. Whether framed as an omission or allegedly misrepresented delivery fee, neither is actionable.

> i. *Plaintiff Does Not Plead an Actionable Omission Under the MMPA Because Panera's Pricing is Publicly Available.*

While pleading she knows that if she orders food online or through her app she will pay 5-10% more for selecting the delivery option as opposed to selecting the in-store pickup option, Plaintiff brings a claim under the MMPA for omission of a material fact. An omission under the MMPA is "any failure by a person to disclose material facts known to him/her..." 15 CSR § 60-9110. Plaintiff cannot dispute that she could have—and indeed did—discover any alleged price differential between delivered food and picked-up food. Compl. ¶30. The allegations in her Complaint confirm as much. Plaintiff pleads that the same food is more expensive "when ordered

---

"offends any public policy as it has been established by the Constitution, statutes or common law of Missouri, or by the Federal Trade Commission, or is unethical, oppressive, or unscrupulous; and present a risk of, or causes, substantial injury to consumers." *Schulte,* 2020 WL 4039221, at *3. The Complaint alleges that Panera's supposed "hidden" delivery fee and undisclosed pricing violates the principles of the American Marketing Association. This interest group's principles are not the public policy of Missouri, and the Complaint does not establish any false misrepresentation or omission that would give rise to any violation thereunder.

via the **same** mobile app for pickup, or when ordered in-store." Compl. ¶4 (emphasis added). This is simply the difference between selecting the delivery button or the pick-up button in the app. Any alleged price difference would have been readily ascertainable to a reasonable consumer. *Martin v. Wm. Wrigley Jr. Co.*, No. 4:17CV00541-NKL, 2017 WL 4797530, at *5 (W.D. Mo. Oct. 24, 2017) ("no reasonable consumer could have been misled by [the product's] packaging" where the amount of gum was visible on the box). Thus, Plaintiff was readily able to ascertain the cost of her food under any method she chose to receive it, and there is no basis to assert that pricing was omitted or concealed. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (nondisclosure claim improper where plaintiff "could have compared the [defendant's] price to the face value with no difficulty").

        ii.    *Plaintiff Does Not Plead a False or Deceptive Practice Under the MMPA Because No Reasonable Consumer Would be Misled By a $4 Delivery Fee.*

Casting a permissible food price differential as a "hidden delivery fee," Plaintiff also premises her MMPA claim on the theory that the $4 delivery fee itself is misrepresented. According to Plaintiff, the $4 delivery fee on Panera's app and website is false and deceptive because the food costs more when delivered. But stating that the delivery fee is $4 is <u>no indication or representation that the cost of the food</u> would be the same if purchased in-store or for delivery. The $4 delivery fee is a fee for the delivery service, not the food. Critically, Plaintiff does not plead that Panera ever represented the food would be the same price if delivered or purchased in-store. Plaintiff in fact pleads that the fee to receive the delivered food was and is exactly as represented—$4. Compl. ¶27.

No reasonable consumer would make this leap in logic. "[F]ederal courts…routinely dismiss consumer protection claims where, as here, a reasonable consumer could not plausibly be misled…" *Martin v. Wm. Wrigley Jr. Co.*, 2017 WL 4797530, at *5. *See also Kelly v. Cape Cod*

*Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (dismissing MMPA claim because "no reasonable consumer" would be deceived). The MMPA affirms that courts may dismiss claims under the "reasonable person" standard. RSMo. § 407.025.1(2).

It is implausible that a "reasonable consumer" would be misled by what a "delivery fee" is or interpret it to imply anything about the cost of the delivered food. A "reasonable customer" understands a "delivery fee" to be "a charge for providing delivery services[.]" *Belizaire v. Ahold U.S.A., Inc.*, No. 18CIV5020-LGS, 2019 WL 280367, at *3 (S.D.N.Y. Jan 22, 2019), *aff'd*, 796 F. App'x 51 (2d Cir. 2020). In other words, a reasonable consumer understands that the $4 delivery fee is a fee for the service of receiving the food, not the food itself. Further, no reasonable consumer can be misled when cursory research—as simple as checking a box in an app or on Panera's website—would have revealed the allegedly "hidden" cost. *Accord Reider v. Electrolux Home Care Prod., Inc.*, No. 8:17CV26-JLS, 2017 WL 7156292, at *3 n. 3 (C.D. Cal. Apr. 21, 2017) ("The hotel guest knows he could buy the $3 minibar candy for less at a neighborhood store. Perhaps he pays the high price so he can stay in his comfortable robe and enjoy the high-priced, in-room movie."); Compl. ¶19 ("food delivery services" are convenient and more recently a "comforting necessity").

Plaintiff's theory has also been rejected by several courts. "[T]here is in fact no law, which requires Defendant to charge the same prices for products, sold through different distribution channels, at different times, in the absence of some specific representation promising to do so." *Silver,* 2018 WL 1535285, at *5. *See also Lokey,* 2020 WL 6822890, at *4 ("absent deception beyond the price differential, the plaintiff cannot challenge [defendant's] pricing decisions"). Plaintiff has not, and she cannot, allege any representation promising that the cost of the food sold

would be the same whether in-store or online. A $4 delivery fee does not amount to such a representation, and no reasonable consumer would conclude that it would.

### C. Plaintiff Received the Benefit of the Bargain and Thus Cannot Establish an Ascertainable Loss Under the MMPA.

A plaintiff suffers an ascertainable loss under the MMPA when she does not receive the "benefit of the bargain." *Thompson*, 993 F. Supp. 2d at 1012. Under this rule, if the buyer purchases and retains the product, she is only deprived of its benefit if "the value of the product as represented" is less than what she "received." *Id.* Plaintiff bargained for delivered food from Panera, at the price quoted to her, and that is exactly what she received. The Complaint does not contain any allegations that the <u>delivered food</u> she purchased was not worth what she paid (or was otherwise defective). Thus, Plaintiff has not alleged facts sufficient to establish an ascertainable loss. *Mikhlin v. Johnson & Johnson*, No. 4:14–CV–881-RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014); *Polk v. KV Pharm. Co.*, No. 4:09-CV-00588-SNL, 2011 WL 6257466, at *5 (E.D. Mo. Dec. 15, 2011) ("Plaintiff has not alleged the Medication was anything other than what it has always purported to be.").

### II. Plaintiff's Claims Under California State Law Are Subject to Dismissal Under the Terms of Use Agreed to By Plaintiff.

Although Plaintiff wants to recover under three different consumer protection laws in two states, Plaintiff's claims under California law are improper under the Terms of Use to which she agreed. When Plaintiff opened her app and selected her order, Panera's Terms of Use were hyperlinked on the home screen menu bar. *See* Ex. A. Plaintiff admits that customers who download the Panera app or visit the website to order food are told that Terms of Use apply. *Id.* at ¶23. Plaintiff concedes that the Terms of Use are available by clicking a hyperlink. *Id.* Moreover, Plaintiff is a MyPanera member. Upon signing up for her MyPanera account, she

agreed that when she clicked "Join Now," she assented to Panera's Terms—terms which were hyperlinked and available for her to review.

Online agreements like the Terms of Use here are enforceable. *Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009). Online agreements are enforceable when "the website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id*. Plaintiff had knowledge of the terms. Compl. ¶¶23, 47. The Terms of Use very clearly advise that they apply to the access and use of the website and app. Ex. A. The "Governing Law and Jurisdiction" term clearly states that "Access to and use of the Services and these Terms are governed by (i) the laws of the State of Missouri, without regard to conflicts of laws principles…" *Id.* Thus, when Plaintiff accessed her app and agreed to order food from Panera, she agreed to the Terms of Use, including that Missouri law, not California law, governs her claims. Compl. ¶47. To be sure, Plaintiff, a resident of California, filed this lawsuit in a Missouri court under a Missouri consumer protection statute.

A federal court sitting in diversity must apply the choice-of-law principles of the forum state, or here Missouri. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is contrary to a fundamental policy of Missouri." *Id.* The Terms of Use are not contrary to a fundamental policy of Missouri; indeed choice of law clauses are routinely enforced in Missouri. *Id.* Likewise, the Terms are not "unconscionable." To find that the Terms of Use are unconscionable, this Court would have to conclude that "no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other." *Id.* at 554. There is nothing procedurally or substantively unfair about the Terms.

Missouri courts apply choice-of-law clauses to statutory causes of action. *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) (finding in MMPA case "no need to engage in a state by state choice of law analysis because [defendant] conditioned every sale to each putative class member upon acceptances of the Missouri choice of law provision"); *Cicle*, 583 F.3d at 553 (applying terms to MMPA claim). For these reasons, Plaintiff, who accepted the Terms of Use, must bring her claims under Missouri law. Her California claims should be dismissed with prejudice.

### III. Independent of the Terms of Use, Plaintiff's Claims Under California State Law Are Subject to Dismissal.

Plaintiff brings the same bundled omission and misrepresentation claims under two California laws that are substantially similar. At the center of these claims is the conduct at issue in her MMPA claim: the $4 delivery fee is allegedly misleading and the alleged omission that delivered food costs 5-10% more is deceptive. Plaintiff alleges this conduct violates the UCL under each of its three prongs for unlawful, unfair, and fraudulent practices. *See* Cal. Bus. & Prof. Code § 17200. Plaintiff also alleges this conduct violates the CLRA as several purported unfair or deceptive practices enumerated by the statute. *See* Cal. Civ. Code § 1770(a). Each claim fails for multiple reasons.[4]

#### A. Under the UCL and CLRA, No Reasonable Consumer Would be Deceived By the $4 Delivery Fee.

To state a claim based on a misrepresentation under the UCL or CLRA, a statement must be likely to deceive a reasonable consumer. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.

---

[4] As a threshold matter, these claims fail statutory standing under Rule 12(b)(6), which under California law is "a question of merits rather than subject matter jurisdiction." *Charbonnet v. Omni Hotels & Resorts*, No. 20-CV-01777-CAB, 2020 WL 7385828, at *5 (S.D. Cal. Dec. 16, 2020). Plaintiff claims the alleged price difference is a fraudulent nondisclosure, but Plaintiff has not established that she relied on any nondisclosure. The Complaint states that she placed her order and paid the total price offered to her for the delivered food. Compl. ¶47. She does not state that she paid more than she otherwise would have paid. Plaintiff has not established she suffered any economic harm. *Charbonnet*, 2020 WL 7385828, at *5.

1995). The reasonable consumer is not the "least sophisticated consumer." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*. at 508. It must be "probable that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id*.

For the same reasons outlined in Section I(B)(ii), no reasonable consumer would be deceived by the $4 delivery fee as any representation about the cost of the food. California courts have recognized that pricing claims, such as the one brought by Plaintiff, fail the reasonable consumer test under the CLRA and the UCL. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d at 1166 (dismissing UCL and CLRA claims under the reasonable consumer test because differential pricing of the same product without any representation was not actionable); *Lokey*, 2020 WL 6822890, at *4 (same); *Eidmann*, 2021 WL 764121, at *7 (same). Panera has not made any affirmative misrepresentations about the pricing of delivered food, and the food as priced is what the customer pays. *See Fabozzi*, 2012 WL 506330, at *2 ("Plaintiff agreed to pay the purchase price he actually paid, so there was no deception in the price he was required to pay.") Plaintiff could have readily ascertained any alleged price differential by comparing the cost of delivered food with food for pickup in-store. *Id.* ("A reasonable consumer would understand, given the information plainly disclosed on Stubhub's website…he may pay a higher price for his tickets"); *Boris*, 35 F. Supp. 3d at 1166 (plaintiffs could have "readily ascertained that these drugs were identical" by "simply comparing" the packaging).

Moreover, California does not require sellers to disclose any price markup. *Quezada v. Franklin Madison Grp., LLC*, No. 19CV2153-LAB (DEB), 2020 WL 5819824, at *5 (S.D. Cal.

Sept. 29, 2020) ("disclosure of markups is not routinely required"). As a matter of law, any alleged failure "to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Berryman v. Merit Prop. Mgt.*, 152 Cal. App. 4th 1544, 1557 (2007); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008).

### B. Non-Disclosure of the Alleged Price Markup is Not Actionable Under Any of the UCL's Three Prongs.

To state an actionable omission claim under the UCL, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Plaintiff's UCL claim fails because Panera had no duty to disclose any alleged price difference between its delivered food and non-delivered food. *Quezada,* 2020 WL 5819824, at *5. "As long as the actual price is disclosed and plaintiffs agreed to pay it, failure to disclose the basis or nature of markups is not actionable under California's UCL[.]" *Id.*

Courts in California have long recognized this rule. *See Kunert v. Mission Fin. Svcs. Corp.*, 110 Cal. App. 4th 242, 265 (2003) (auto dealer's commission or up-charge added to the rate at which the dealer will finance a car for a consumer is not an unfair practice; disclosure not required by law); *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1399 (2005) (under the UCL, exchanger of foreign currency not required to disclose its wholesale exchange rate to the customer); *Fabozzi v. StubHub, Inc.*, No. C-11-4385-EMC, 2012 WL 506330, at *7 (N.D. Cal. Feb. 15, 2012) (failure to disclose face value of tickets sold at resale is not unfair under the UCL because "purchasers of tickets are getting exactly what they paid for—genuine tickets—at a price they are willing to pay, it is hard to understand how such a transaction could be deemed unfair"); *Reider*, 2017 WL 7156292, at *3 ("How a merchant makes its profit, whether it is through the sale

- 15 -

Sept. 29, 2020) ("disclosure of markups is not routinely required"). As a matter of law, any alleged failure "to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Berryman v. Merit Prop. Mgt.*, 152 Cal. App. 4th 1544, 1557 (2007); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008).

### B. Non-Disclosure of the Alleged Price Markup is Not Actionable Under Any of the UCL's Three Prongs.

To state an actionable omission claim under the UCL, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Plaintiff's UCL claim fails because Panera had no duty to disclose any alleged price difference between its delivered food and non-delivered food. *Quezada,* 2020 WL 5819824, at *5. "As long as the actual price is disclosed and plaintiffs agreed to pay it, failure to disclose the basis or nature of markups is not actionable under California's UCL[.]" *Id.*

Courts in California have long recognized this rule. *See Kunert v. Mission Fin. Svcs. Corp.*, 110 Cal. App. 4th 242, 265 (2003) (auto dealer's commission or up-charge added to the rate at which the dealer will finance a car for a consumer is not an unfair practice; disclosure not required by law); *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1399 (2005) (under the UCL, exchanger of foreign currency not required to disclose its wholesale exchange rate to the customer); *Fabozzi v. StubHub, Inc.*, No. C-11-4385-EMC, 2012 WL 506330, at *7 (N.D. Cal. Feb. 15, 2012) (failure to disclose face value of tickets sold at resale is not unfair under the UCL because "purchasers of tickets are getting exactly what they paid for—genuine tickets—at a price they are willing to pay, it is hard to understand how such a transaction could be deemed unfair"); *Reider*, 2017 WL 7156292, at *3 ("How a merchant makes its profit, whether it is through the sale

- 15 -

of products or through the delivery of those products, is of no direct concern to the customer who is simply looking for the best product at the best price").

Stating a "delivery fee" for the delivery itself is not a misrepresentation that creates a duty to disclose the alleged markup. A similar argument was made and rejected in *McCann v. Lucky Money, Inc*. The plaintiff in *McCann* argued that advertising the currency exchange rate was false and misleading because exchanger of the currency charged more for the exchange at retail than it actually paid for the currency at wholesale. 129 Cal. App. 4th at 1399. The court found that the currency exchanger had no duty to disclose its markup, and advertising its exchange rate (without the disclosed markup) was not a false or misleading statement. *Id. See also Searle v. Wyndham Int'l., Inc.*, 126 Cal.Rptr.2d 231, 236-237 (2002) (no duty to disclose "service charge" was actually paid to the server even though it was itemized with other charges). For the reasons stated in Section I(B)(i), the alleged omission of the price markup was not contrary to Panera's stated $4 delivery fee.

Plaintiff alleges the actual price of her delivered food was disclosed, and she agreed to pay it. Compl. ¶¶27, 47. She received exactly what she bargained for—food delivered from Panera at the price quoted by Panera for delivery—and it was readily apparent what her same order would have cost had she chosen to pick it up in-store. Any alleged nondisclosure of a markup is not an actionable claim under the UCL.

### C. Plaintiff Also Fails to State a Claim Under the "Unfair" Prong of the UCL Because She Does Not Allege an Actionable Unfair Practice.

Panera's stated $4 delivery fee does not violate the "unfair" prong of the UCL for a separate reason. Plaintiff's theory does not amount to an unfair practice under the *South Bay* test. The Ninth Circuit has held that "unfair" conduct under the UCL is determined by the balancing test articulated in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861

(1999). *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1171 (9th Cir. 2012).[5] The *South Bay* court stated:

> whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim....an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

72 Cal. App. 4th at 886. As discussed before, the $4 delivery fee is not misleading or false, and Panera has no duty to disclose any alleged price markup. This ends the claim under *South Bay*. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (dismissing UCL claim under *South Bay* because the "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical."); *Sud v. Costco Wholesale Corp.*, 731 F. App'x 719, 720 (9th Cir. 2018) (same).

Plaintiff received what she bargained for—food delivered at the price disclosed to her. She voluntarily agreed to purchase the food at a price she was willing to pay. Without an actionable omission or representation, California courts routinely dismiss claims brought by plaintiffs who voluntarily purchased the items at the exact price disclosed them under the "unfair" prong of the UCL. *Williamson v. Reinalt-Thomas Corp.*, No. 5:11CV03548, 2012 WL 1438812, at *12 (N.D. Cal. Apr. 25, 2012) (implausible that plaintiff was "negatively impacted" by defendants when "Plaintiff was quoted the price of $216.54, including installation, and that he agreed to pay the full amount he was eventually charged."); *Searle*, 26 Cal. Rptr. 2d at 237 (dismissing UCL claim under

[5] As noted in *Davis,* some California courts also look at whether there is a violation of a "legislatively declared" policy as defined in *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). 691 F.3d at 1170. Plaintiff does not assert a legislatively declared policy has been violated. The American Marketing Association's publications are not legislatively declared policies on which to state a claim. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) (requiring a specific law indicating California's public policy to establish an unfair practice under the UCL). Plaintiff has no duty to disclose any alleged markup, which would be readily apparent on Panera's website or app.

"unfair" prong, as "patron has no legitimate interest in what the hotel does with the service charge"); *Reider*, 2017 WL 7156292, at *3 (dismissing UCL claim for allegedly unfair, high shipping charges because "[v]isitors to Electrolux's website are presented with the shipping and handling charges they will have to pay should they choose to purchase a product through their website. Should they find these charges too high, they are free to make their purchases elsewhere").

Balancing the utility of Panera's conduct (providing essential workers who prepare food for delivery and deliver the food in a pandemic) against the harm to Plaintiff (none—she can check the price differences) confirms that Panera's conduct is not unfair and did not violate the UCL.

### D. Plaintiff Also Fails to State a Claim Under the CLRA Because She Does Not Allege an Actionable Unfair or Deceptive Practice.

Plaintiff alleges that the $4 delivery fee violates sections (a)(5), (9), (14), (16), and (19) of the CLRA, which relate to representations made and advertising of goods and services. Cal. Civ. Code § 1770(a). Plaintiff's claim, repackaged under the CLRA, fails for two reasons. First, Plaintiff fails to establish any misrepresentation prohibited under the CLRA and fails to cite any statement made by Panera that would lead a reasonable consumer to conclude the delivery fees are related to the actual cost of the food. *See supra* Section III(A). Second, the alleged conduct does not violate, let alone fit under, each subsection of the CLRA identified by Plaintiff in her Complaint. Under those sections, it is unlawful to:

- (a)(5): represent that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have";

- (a)(9) advertise "goods or services with intent not to sell them as advertised";

- (a)(14) represent that a "transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law";

- (a)(16) represent that "the subject of a transaction has been supplied in accordance with a previous representation when it has not"; and

- (a)(19) insert "an unconscionable provision in the contract."

Panera had no duty to disclose any alleged price markup, and Plaintiff does not plead any actionable misrepresentation that would fall under any of these sections. Specifically, Plaintiff does not plead any unconscionable provision in a contract under (a)(19) or that her food delivery was not supplied in the form and price she agreed to purchase under (a)(16). She does not claim that her delivered food should have, but did not, confer a right, remedy, or obligation that Panera does not have under (a)(14).

Panera did not sell the food for anything other than the price it agreed to provide it for and therefore sold the food as advertised under (a)(9). Panera did not represent anything about the cost of its food by charging a delivery fee under (a)(5). Panera represented that Plaintiff's delivered food would cost $46.33, including $4 for the service of having the food delivered. Panera charged Plaintiff and delivered the food accordingly. Plaintiff's allegations do not establish a plausible violation of the CLRA.[6]

## CONCLUSION

For the foregoing reasons, Defendant Panera Bread Company respectfully requests that the Court dismiss Plaintiff's Class Action Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[6] Plaintiff links her claim under the "unlawful" prong of the UCL to the alleged violations of the CLRA. Panera did not violate the CLRA; thus, it did not violate the unlawful prong of the UCL. If there is no violation of the predicate law serving as the basis for the "unlawful" claim, there can be no actionable UCL claim. *Berryman*, 152 Cal. App. 4th at 1554.

Respectfully submitted,

THOMPSON COBURN LLP

By */s/ Kimberly M. Bousquet*
    Christopher M. Hohn, #44124MO
    Kimberly M. Bousquet, #56829MO
    Kristen E. Sanocki, #67375MO
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000
    chohn@thompsoncoburn.com
    kbousquet@thompsoncoburn.com
    ksanocki@thompsoncoburn.com

    Lukas Sosnicki, #295895CA
    Admitted *Pro Hac Vice*
    2029 Century Park East
    19th Floor
    Los Angeles, California 90067
    310-282-2500
    FAX 310-282-2501
    lsosnicki@thompsoncoburn.com

*Attorneys for Defendant Panera Bread Company*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

*/s/ Kimberly M. Bousquet*